J-A18010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: M.A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appeal of B.P. | : | |
| | : | |
| | : | No. 1420 WDA 2019 |

Appeal from the Order Entered August 22, 2019
In the Court of Common Pleas of Butler County Orphans' Court
At No(s): OA No. 60 of 2018

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E:                    FILED JULY 30, 2020

B.P. ("Father") appeals from the order entered on August 22, 2019, which granted the petition filed by Butler County Children and Youth Services ("BCCYS" or "Agency") to involuntarily terminate his parental rights to his minor child, M.A.P. ("Child"), pursuant to sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1]  Father's counsel filed a petition to withdraw and a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349 (Pa. 2009).

_____

[1] At the termination hearing held on July 9, 2019, counsel for B.S. ("Mother") indicated to the trial court that Mother wished to sign a consent to adopt. Therefore, by agreement of all parties, Mother's petition was continued. See Trial Court Opinion (TCO), 8/22/19, at 2. On March 18, 2020, counsel for Mother filed a letter/notice of non-participation in this matter pursuant to Pa.R.A.P. 908, informing this Court that Mother's parental rights had been terminated, and that she did not appeal that determination. We also note that neither the Agency nor counsel for Child has filed a brief in conjunction with this appeal. Both have adopted the position espoused by the trial court and suggest that this Court should affirm that decision.

Following review, we grant counsel's petition to withdraw and affirm the termination order.

The Anders brief filed by Father's counsel contains a summarization of the factual and procedural history of this matter as follows:

[B.P.] (hereinafter "Father") is the natural parent of M.A.P. [BCCYS] received a report of drug use by both parents, poor housing conditions, specifically of ... [C]hild's bedroom, and [C]hild possibly being developmentally delayed. BCCYS investigated on May 19, 2017, and found no furniture in ... [C]hild's bedroom and a strong odor of human urine. Additionally, both of the parents actively used drugs. Interactions with the parents deteriorated during the investigation where Father became argumentative and uncooperative, thus BCCYS detained Child that day and placed [him] with [S.P.] (hereinafter "Paternal Grandmother").

A 30-day safety plan was established including Father's objectives of demonstrating an ability to meet ... Child's basic needs and maintain a sober lifestyle by maintaining safe, stable and clean housing with working utilities; maintaining a legal source of income sufficient to meet ... Child's needs; submitting to drug[] screens; improving the conditions of the home; and attending and actively participating in Child's appointments. The [c]ourt found that Father had made only minimal progress with the service plan. Father entered Pyramid to detox but left after a few days. He missed at least one drug screen per week and tested positive on screens that he participated in. Father was inconsistent with services. Moreover, services, such as that provided at Specialty Outreach Services, were terminated because Father was not cooperative or compliant. Furthermore, on June 18, 2017, conditions in the home had not changed. Therefore, it was declared still unsafe for Child to return to [F]ather.

Father completed twenty-six (26) of the fifty-two (52) drug screens prior to his incarceration. Out of the fifty-two (52) screens, forty-six (46) of the screens were considered positive for either positive results, no–shows, or unable to provide a sample. This included seventeen (17) positives for amphetamines, eighteen (18) positives for Suboxone, one (1) positive result for methamphetamine, as well as faint lines - considered negative results - eleven (11) times for methamphetamine and thirteen

(13) times for cocaine. Father failed to show up for his screens twenty-six (26) times.

Father was incarcerated in October 2017 after a police raid of his home. Father participated in Skype video visits once or twice a week while incarcerated through coordination with Paternal Grandmother, but otherwise could not visit with [C]hild due to Butler County Jail policy. Father was released from incarceration on November 30, 2018. He met with BCCYS but told them he wanted to move to Allegheny County[;] therefore[,] he would not be participating in services in Butler County. Furthermore, he did not give BCCYS documentation regarding any services, drug screens, employment, or residence verifications. He did not provide the name or information regarding the person with whom he was living.

Father maintained contact with ... Child through Paternal Grandmother. Father attended twelve (12) out of eighteen (18) visits outside of his incarceration period. A clear bond existed between Father and Child, where Child called him "Daddy" and jumped into his lap. However, Father testified that he was not in a position to take better care of Child than Paternal Grandmother, and that Child deserves the life that Paternal Grandmother provided Child. He agreed that Child should stay with Paternal Grandmother, but that due to his beliefs and past trauma, he would not sign adoption consent papers.

BCCYS filed a Petition for Involuntary Termination of Parental Rights on October 25, 2018. A hearing was held on July 9, 2019. Father testified that he felt threatened by BCCYS during discussions with them. The court noted that his demeanor was angry but emotionally pained as well. The [c]ourt also noted that Paternal Grandmother held a strong positive bond with Child. She was loving toward Child. Paternal Grandmother was proactive and patient in meeting Child's needs and provided a safe and stable home. Ultimately, the [c]ourt entered Findings of Fact and an Order of Court terminating Father's parental rights on August 22, 2019.

Anders brief at 1-3.

On September 19, 2019, Father filed a timely notice of appeal, along with a concise statement of matters complained of on appeal, in which he

contended that the Agency failed to satisfy the grounds for termination set forth in section 2511(a)(2) or any other section of 2511(a), and, thus, the trial court's order is not supported by sufficient evidence. Father also argued that section 2511(b) was not supported by the evidence, namely, that there is a strong emotional bond that exists between Father and Child. However, despite these assertions in the concise statement contained in the record submitted to this Court in conjunction with the notice of appeal, Father's counsel states in the Anders brief that "[c]ounsel filed the instant appeal at the direction of [Father]. Counsel did not file matters complained of on appeal, instead filing a Notice of Intention to file Anders brief. It is [c]ounsel's belief that this appeal is without merit." Anders brief at vi.

"When faced with a purported Anders brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." Commonwealth v. Rojas, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting Commonwealth v. Smith, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

> Court-appointed counsel who seeks to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:
>
> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter or amicus curiae brief; and (3) furnish a copy of the brief to the [appellant] and advise the [appellant] of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.

> Commonwealth v. Miller, 715 A.2d 1203 (Pa. Super. 1998) (citation omitted).

Rojas, 874 A.2d at 639. Father's counsel has complied with these requirements. Counsel petitioned for leave to withdraw, and filed a brief satisfying the requirements of Anders, as discussed, infra. Counsel also provided a copy of the brief to Father, and submitted proof that he advised Father of his right to retain new counsel, proceed pro se, and/or to raise new points not addressed in the Anders brief.

Our Supreme Court has held, in addition, that counsel must explain the reasons underlying his assessment of the appellant's case and his conclusion that the claims are frivolous. Thus, counsel's Anders brief must satisfy the following criteria before we may consider the merits of the underlying appeal:

> [W]e hold that in the Anders brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Santiago, 978 A.2d at 361.

Upon review of the Anders brief submitted by Father's counsel, we find it complies with the technical requirements of Santiago. Counsel's Anders brief (1) provides a summary of the procedural history and facts of this case; (2) directs our attention, when applicable, to the portions of the record that ostensibly supports Father's claims of error; (3) concludes that Father's claims

- 5 -

are frivolous; and (4) does so by citation to the record and appropriate/applicable legal authorities. Thus, we now examine whether Father's claims are, indeed, frivolous. We also must "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." Commonwealth v. Dempster, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009) (quoting In re S.H., 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

Id. (quoting In re J.L.C. & J.R.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. In re M.G., 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa. Super. 2003).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. R.N.J., 985 A.2d at 276.

In this case, the trial court terminated Father's parental rights pursuant to section 2511(a)(1), (2), (5), (8) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en

banc).  Here we analyze the court's decision to terminate under section

2511(a)(2) and (b), which provides as follows:

> (a) General rule.--The rights of a parent in regard to a child may
> be terminated after a petition filed on any of the following
> grounds:
>
> * * *
>
> > (2) The repeated and continued incapacity, abuse,
> > neglect or refusal of the parent has caused the child
> > to be without essential parental care, control or
> > subsistence necessary for his physical or mental well-
> > being and the conditions and causes of the incapacity,
> > abuse, neglect or refusal cannot or will not be
> > remedied by the parent.
>
> * * *
>
> (b) Other considerations.--The court in terminating the rights
> of a parent shall give primary consideration to the developmental,
> physical and emotional needs and welfare of the child.  The rights
> of a parent shall not be terminated solely on the basis of
> environmental factors such as inadequate housing, furnishings,
> income, clothing and medical care if found to be beyond the
> control of the parent.  With respect to any petition filed pursuant
> to subsection (a)(1), (6) or (8), the court shall not consider any
> efforts by the parent to remedy the conditions described therein
> which are first initiated subsequent to the giving of notice of the
> filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by

terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] §
> 2511(a)(2), the following three elements must be met:  (1)
> repeated and continued incapacity, abuse, neglect or refusal; (2)
> such incapacity, abuse, neglect or refusal has caused the child to
> be without essential parental care, control or subsistence

necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With regard to section 2511(a)(2), counsel for Father summarized the trial court's findings, noting Father's addictions and mental health problems, which resulted in the conditions of the home and Child's developmental problems. See Anders brief at 8. Counsel also mentions the lack of furniture and the strong smell of urine in Child's bedroom at the first visit by the Agency, that "Child was developmentally delayed, and both Mother and Father were actively abusing drugs." Id. Counsel further mentions the initial thirty-day safety plan and Father's failure to comply. Based upon the trial court's findings, counsel also notes Father's positive drug tests and his failure to provide "proof of employment, residence, prescriptions, drug screens, services participation, or treatment." Id. at 8-9. Counsel also acknowledges Father's arrest and incarceration for a period longer than a year. Id. at 9.

The trial court provided an extensive discussion of the facts, which are the basis for counsel's summary in the Anders brief. The court concluded by stating:

> Father has by conduct continuing for a period of at least six months preceding the filing of the instant petition refused or failed to perform parental duties. The repeated and continued incapacity, neglect and refusal of Father has caused Child to be without essential parental care, control or subsistence necessary for his physical and mental well-being. Father cannot or will not remedy these causes and conditions. Child has been removed from Father's care for well over twelve months. The conditions which led to the removal and placement of Child continue to exist. Even with the services available to Father, he is not likely to remedy the conditions which led to the removal and placement of Child within a reasonable period of time. Child deserves stability, safety and permanency. Terminating Father's parental rights will best meet the needs and welfare of Child.

TCO at 4.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating Father's parental rights pursuant to section 2511(a). The testimony provided at the termination hearing supports the court's findings and conclusions. Thus, Father is not entitled to relief as to section 2511(a)(2).

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(b). We have discussed our analysis under section 2511(b) as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we

- 10 -

instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

In re Adoption of J.M., 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

Relating to Section 2511(b), the trial court found that terminating Father's parental rights would best serve Child's needs and welfare, stating:

> The [c]ourt gave primary consideration to the needs and welfare of Child pursuant to section 2511(b). It is clear that Father and Child have a positive bond. However, by Father's own testimony[,] he cannot now or in the foreseeable future care for Child. Father and Paternal Grandmother have a good relationship. Paternal Grandmother and Child have a strong positive bond and Paternal Grandmother can provide Child with the nurture, love, safety and permanency Child needs and deserves. The harm, if any, caused to Child by terminating Father's parental rights is far out-weighed by the safety and permanency Child will gain with Paternal Grandmother.

TCO at 4. Again, our review of the record reveals that it supports the trial court's conclusion that terminating Father's parental rights would best serve Child's needs and welfare. Child will not suffer irreparable harm if Father's parental rights are terminated.

Accordingly, our independent review of Father's claims demonstrates that they do not entitle him to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. See Commonwealth v. Flowers, 113 A.3d 1246, 1250 (Pa. Super. 2015).

Therefore, we grant counsel's petition to withdraw, and affirm the trial court's order terminating Father's parental rights.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2020